IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WAYNE EVANGELISTA, KELLY EVANGELISTA,
and LEAH CHAVEZ,

                           Plaintiffs,                     OPINION AND ORDER

    v.

                                                                  23-cv-491-wmc

KRISTA FLANAGAN, CHIEF JENNIFER
PAGENKOPF, PRINCIPAL JIM PLINER,
ASSISTANT PRINCIPAL BRAD ASHMORE,
LAURA BERO, OFFICER SCHEWE, and
MARK DIEREKS,

                           Defendants.

---

Representing themselves, plaintiffs Wayne Evangelista, Kelly Evangelista, and their daughter, Leah Chavez, bring this lawsuit against certain police and public school officials in Oregon, Wisconsin, under 42 U.S.C. § 1983, claiming that their First and Fourth Amendment rights were violated during a search of Leah's bookbag at school and in a series of phone calls by school officials that same day. Because plaintiffs seek leave to proceed without prepayment of the entire filing fee, the court must screen their complaint and dismiss any portion that: is legally frivolous or malicious; fails to state a claim upon which relief may be granted; or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915(e)(2)(B). Because plaintiffs' complaint fails to state an actionable claim even construing their allegations generously, *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011), the court must dismiss this lawsuit without leave to amend.

ALLEGATIONS OF FACT[1]

On May 24, 2023, Leah Chavez, a student at Oregon High School ("OHS") in Oregon, Wisconsin, was brought to the office of its Assistant Principal Brad Ashmore for a meeting with Ashmore and OHS Case Manager Laura Bero. At that meeting, Chavez, Ashmore, and Bero discussed a report that a Personal Fitness teacher at OHS, Mark Diereks, made regarding Chavez's possession of a vape during an off-campus bike ride some five weeks earlier.

During their meeting, Chavez denied owning the vape or knowing anything about it, even offering Ashmore the opportunity to look through her bag, since she didn't have a vape in her possession. After seeing the vape, Chavez also claimed that Diereks began to be "very rude" towards her, including making comments about her need to go to the bathroom when she was experiencing a urinary tract infection. (Dkt. #1, at 12.)

Initially declining to search Chavez's bag, Ashmore instead asked her more questions about the vape, including who its owner was. However, when Ashmore later decided to check Chavez's bag, Chavez informed him that the bag contained a keychain bottle of pepper spray and a flashlight stun gun. Ashmore then proceeded to search Chavez's bag in front of Bero, locating the pepper spray and stun gun, both of which Chavez reported using for self-defense.

At that point, Ashmore summoned OHS School Resource Officer Schewe, who informed Chavez that he had to take her bag in for evidence because her pepper spray and stun gun are considered weapons and prohibited at school. Ashmore and Schewe also

---

[1] Unless otherwise indicated, the allegations of facts in plaintiffs' complaint are taken as true for purposes of screening.

2

found a bottle of medication in Chavez's bag with its label partially wiped off, after which they both began to accuse her of having drugs on school grounds. Next, Ashmore called Chavez's parents, Wayne and Kelly Evangelista. When Wayne answered the phone, however, he refused to allow Schewe to interrogate him or ask for any personal information. Kelly then got on the phone and did the same, causing Officer Schewe to become frustrated. On speakerphone, Wayne explained that the medication in Chavez's bag had been approved by OHS. When Schewe looked up the medication, he further determined that it was used to treat urinary tract infections. After consulting with an OHS nurse, Schewe also learned that Chavez had a valid prescription and permission to keep it at school.

Ashmore and Schewe then called the Evangelistas to provide an update on their findings regarding Chavez's medication and to inform them that they could retrieve her pepper spray at the OHS office. At that point, Ashmore allegedly provided Schewe a sheet of paper containing the Evangelistas' personal information in apparent violation of OHS policy, including information that they had "no legal reason to provide in the first place." (*Id*. at 13.) Schewe then took the information and left the office, while Chavez was given an in-school suspension for the rest of the day, overseen by Case Manager Bero, who allegedly expressed disagreement with how both Assistant Principal Ashmore and Officer Schewe handled the situation. Later, Wayne Evangelista also alleges he was "harassed and even threatened" by the Oregon Police Department. (*Id*. at 11.)

OPINION

Chavez claims that Fitness Teacher Diereks violated her Fourth Amendment rights by "infringing upon [her] person and effects" off school grounds and her First Amendment rights by reporting her possession of a vape, both allegedly in retaliation for her inability to participate fully in his class due to her urinary tract infection. (*Id.* at 14.) Plaintiffs also jointly claim that defendants Ashmore, Schewe, and Bero violated their First and Fourth Amendment rights through their conduct during the search of Chavez's bag and their conversations with the Evangelistas. Plaintiffs further contend that OHS Principal Jim Pliner, Oregon School Board President Krista Flanagan, and Oregon Police Department Chief Jennifer Pagenkopf violated their constitutional rights by either denying plaintiffs the opportunity to "redress" the situation surrounding the search of Chavez's bag or for their roles in supervising Ashmore, Schewe, and Bero. (*Id*. at 10-14.) Unfortunately, none of plaintiffs' allegations state a First or Fourth Amendment claim against any of the defendants for at least three reasons, each of which is addressed below.[2]

*First*, none of Diereks' alleged actions violated Chavez's constitutional rights. As to her Fourth Amendment claim, Chavez only alleges that Diereks saw a vape fall out of her pocket as he was helping her pick up a phone she had dropped, *not* that he searched or seized her person or belongings. (*Id.* at 6.) Diereks was entitled to observe things in plain sight on school business, even if his gym class was biking off-site. *See California v. Ciraolo*, 476 U.S. 207, 213 (1986) (Fourth Amendment does not require state actors to "shield

---

[2] Fourth Amendment protections against unreasonable searches and seizures apply to state actors under the Fourteenth Amendment. *Zoretic v. Darge*, 832 F.3d 639, 643 (7th Cir. 2016).

their eyes" on public thoroughfares); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (Fourth Amendment applies to searches conducted by school authorities).

Nor do Diereks' actions implicate Chavez's First Amendment rights. Specifically, Chavez contends that Diereks: (1) made comments about her need to go to the bathroom during his class because she was experiencing a urinary tract infection; and (2) waited five weeks to report her vape possession because she was unable to participate fully in his gym class. Chavez only identifies conduct that she engaged in -- going to the bathroom frequently and possessing a vape -- not any words that she may have uttered. For non-verbal conduct to be protected by the First Amendment, the actor must intend to "express an idea," and there must be a "great likelihood" the message would be understood by those observing that conduct. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). For example, non-verbal student conduct with a sufficiently particularized message may include wearing an armband to protest a war, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 504, 505 (1969), or waving a banner promoting illegal drug use at an off-campus, school-approved activity, *Morse v. Frederick*, 551 U.S. 393, 396 (2007). Merely going to the bathroom or possessing a vape, even for a friend, does not "express an idea" protected by the First Amendment, let alone a message capable of being readily understood by those observing it.

*Second*, defendants Ashmore and Schewe were within their rights as school officials to search Chavez's bag, as well as speak with the Evangelistas over the phone about their findings. To begin, even as alleged in the complaint, Charez *volunteered* to have Ashmore search her bag. However, if Chavez's consent to search her bag was not freely given, *Tarter v. Raybuck*, 742 F.2d 977, 980-81 (6th Cir. 1984), there was ample justification for

5

Ashmore and Schewe to examine the bag and its contents after Chavez admitted to keeping pepper spray and a stun gun on school grounds. *T.L.O.*, 469 U.S. at 341-42; Wis. Stat. § 948.61 (prohibiting unauthorized possession of electronic weapons in schools). Thus, none of plaintiffs' allegations suggest either defendant exceeded the scope of an authorized search or investigation after her admission.

Similarly, defendants Ashmore and Schewe's conversations with Chavez and the Evangelistas did not intrude on their First Amendment right to petition the government for redress of grievances. Indeed, the fact that defendants reached out to plaintiffs to have those conversations compels the opposite finding. The right to petition the government is the right to petition, not to receive a response from government, let alone a favorable one. *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Nor did Ashmore and Schewe violate any of plaintiffs' Fourth Amendment rights by asking them questions about Chavez's conduct as a student. *Sabol v. Walter Payton Coll. Prep. High Sch.*, 804 F. Supp. 2d 747, 756 (N.D. Ill. 2011) (school officials entitled to question student about suspected rule violations); *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (in law enforcement, officers are free to ask questions without violating Fourth Amendment).

Finally, because plaintiffs lack any reasonable expectation of privacy in information that they voluntarily turned over to a third party, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979), even if they did so under the assumption it would only be used for a limited purpose under school policy, *United States v. Miller*, 425 U.S. 435, 443 (1976), Ashmore's decision to share any relevant, personally-identifying information about Chavez or the Evangelistas in OHS systems with its School Resource Officer does not run afoul of their Fourth Amendment rights. *Carpenter v. United States*, 585 U.S. 296, 308 (2018).

*Third*, plaintiffs do not claim that defendants Bero, Flanagan, Pagenkopf, or Pliner had any *personal* involvement with the constitutional violations alleged in their complaint. Instead, their argument relies on a theory of vicarious or bystander liability, which § 1983 does not recognize. Specifically, to be held liable under § 1983, a plaintiff must prove the defendant's personal participation or direct responsibility for the constitutional deprivation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). For a supervisor -- like Flanagan, Pagenkopf, or Pliner -- to be liable, they must be "personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). At minimum, to establish personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)).

Here, plaintiffs fail to identify *any* actions that defendants Flanagan, Pagenkopf, or Pliner took personally with respect to the wrongs alleged -- whether an inability to "redress" government or otherwise -- outside of their roles as supervisors or trainers. Though Case Manager Bero's personal involvement is a closer question, given her presence in Ashmore's office, she cannot be liable for vicariously or as a bystander given the court has already determined the actions of Ashmore or Schewe that she observed do *not* give rise to an actionable constitutional claim. Accordingly, none of plaintiffs' allegations state a claim against the supervisory or bystander defendants.

Finally, since the court has no basis to infer that plaintiffs could amend their complaint to save it from dismissal, the court is disinclined to offer them an opportunity

7

to amend. Indeed, plaintiffs' complaint affirmatively pleads facts that *preclude* their claims as set forth above. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("[T]he court should grant leave to amend after dismissal of the first complaint unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted.") (emphasis original and citation and quotation marks omitted). At bottom, plaintiffs' claim challenges nothing more than a school's everyday interaction with a student being questioned about potential violations of school policy, with that student's parents, and with law enforcement authorities. Accordingly, this case will be dismissed with prejudice.[3]

ORDER

IT IS ORDERED that:

1) The complaint filed by plaintiffs Wayne Evangelista, Kelly Evangelista, and Leah Chavez (dkt. #1) is DISMISSED WITH PREJUDICE.

2) The clerk of court is directed to close this case.

Entered this 10th day of December, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] Should plaintiffs believe that the court has erred legally or that they could have alleged in good faith additional facts overcoming the obvious defects outlined in this Opinion, they may still move for reconsideration. To succeed, however, that motion will have to provide *specific* case law or facts supporting their claims.